Michael J. Maggiano, Esquire – Attorney ID 014581974
**MAGGIANO, DIGIROLAMO & LIZZI, PC**
201 Columbia Avenue
Fort Lee, New Jersey 07024
Phone: (201) 585-9111
Fax: (201)292-8145


Philip Federico - Admitted *Pro Hac*
Brent Ceryes - Admitted *Pro Hac*
**SCHOCHOR, FEDERICO & STATON, P.A.**
1211 St. Paul Street
Baltimore, Maryland 21202
Phone:  (410) 234 – 1000
Fax: (410) 234 – 1010
pfederico@sfspa.com
bceryes@sfspa.com


Jared R. Cooper
Brett Stambolian
**ROBINSON & YABLON, P.C.**
232 Madison Avenue, Suite 909
New York, New York 10016
Phone: 212-725-8566
Fax:  212-725-8567
jcooper@ryinjury.com
bstambolian@ryinjury.com


**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LAUREN MARRERO & JULIO C. MARRERO, CHARITY SIMMS, AND DUANNE WINLEY-DUNK<br><br>Plaintiffs,<br><br>v.<br><br>HEALTHPLUS SURGERY CENTER, LLC; YAN MOSHE; REGINA MOSHE, M.D.; CITIMEDICAL I PLLC;; MICHELE MILLER; YASMEEN KHAN, MD; MRK | Civil Action No.: 2:19-cv-00964-(WJM)<br><br>*FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL* |

CONSULTING, LLC; MARIE KASSAI; METRO PAIN SPECIALISTS PROFESSIONAL CORPORATION; PREMIER ANESTHESIOLOGY ASSOCIATES PA; CITIMED SERVICES, PA; HUDSON REGIONAL HOSPITAL.

Defendants.

## <u>Table of Contents</u>

IDENTIFICATION OF PARTIES (Local Rule 10.1) ............................................... 1

INTRODUCTION ....................................................................................................... 1

PARTIES .................................................................................................................... 4

JURISDICTION ......................................................................................................... 8

FACTS COMMON TO ALL COUNTS...................................................................... 9

A.    The Defendant Yan Moshe oversaw and controlled a large network of financially interrelated entities that sought to direct patients to HealthPlus LLC and inflate patient billing through a process of inappropriate and negligent referrals. ....................................... 9

    1.    Patients were referred to the HealthPlus facility for treatment by entities with whom Yan Moshe maintained a financial and family relationship. ........................................... 9

    2.    The Yan and Regina Moshe owned/affiliated entities existed as a single economic entity designed to generate profits from Yan Moshe and his family. ................................ 12

B.    The complex interrelationships of these entities and conduct of Yan Moshe in seeking to maximize profits resulted in large, unmanageable patient volumes that harmed patient well-being. 13

C.    HealthPlus Staff, including Medical Director, Nursing Directors, administrators, and infection prevention consultants negligently failed to carry out their responsibilities to oversee sterilization and infection control at the facility and protect patient safety, in violation of applicable standards of care. ............................................................................................ 14

D.    Privileged Physicians, Entities Providing Anesthesia, and Referring Physicians failed to report and intervene in response to deficiencies in infection control and sterilization, but rather continued to see and treat and/or refer patients to HealthPlus, in violation of the standards of care.    15

E.    The New Jersey Department of Health Investigation .................................. 16

CLASS ACTION ALLEGATIONS ......................................................................... 18

COUNT ONE  (Patient's Claim for Negligence against HealthPlus, the Medical Director  and the Nursing Director Defendant) ........................................................................ 20

COUNT TWO  (Patient's Claim for Negligence against Yan Moshe as Owner of HealthPlus) ..................................................................................................................... 24

COUNT THREE  (Patient's Claim for Negligence against Citimedical NY, Citimed NJ, Premier, Pain as Related Entities)............................................................................. 26

COUNT FOUR (Patient's Claim for Direct Negligence against Yan Moshe)......................... 28

COUNT FIVE (Patient's Claim for Negligence against the MRK Defendants) ..................... 30

COUNT SIX (Patient's Claim for Negligent Referral Against Regina Moshe, M.D. and Citimedical NY)............................................................................................................. 33

COUNT SEVEN (Patient's Claim for Negligent Against the Anesthesiologist Defendants) .. 35

COUNT EIGHT (Spousal Claim for Negligence).................................................. 37

COUNT NINE (Loss of Society, Consortium, Companionship and Services) ........................ 38

JURY DEMAND ................................................................................................................. 39

## PLAINTIFFS FIRST AMENDED COMPLAINT

Plaintiffs Lauren Marrero, Julio C. Marrero, Charity Simms, and Duanne Winley Dunk, file this First Amended Complaint on behalf of themselves and on behalf of a class of all similarly situated persons, by way of this Complaint against Defendants HealthPlus Surgery Center, LLC; Yan Moshe; Regina Moshe, M.D.; Citimedical I PLLC; Michele Miller; Yasmeen Khan, MD; MRK Consulting, LLC; Marie Kassai; Metro Pain Specialists Professional Corporation; Premier Anesthesiology Associates PA; Citimed Services., PA., and Hudson Regional Hospital, and say:

## IDENTIFICATION OF PARTIES
### (Local Rule 10.1)

1.      The names and addresses of the parties to this action are: Plaintiffs Lauren Marrero and Julio Marrero, 40 Bailey Avenue, Bloomingdale, NJ  07403; Defendant HealthPlus, 190 Midland Avenue, Saddlebrook, NJ; Defendant Yan Moshe, c/o Richard Williams, Jr., Esquire, 1300 Mount Kemble Avenue, P.O. Box 2075, Morristown, NJ  07962; Defendant Regina Moshe, M.D., 1963 Grand Concourse, Floor 2, Bronx, NY 10453; Defendant Citimedical I PLLC, 1963 Grand Concourse, Floor 2, Bronx, NY 10453; Defendant Michele Miller, 47 Devonshire Drive, Clifton, NJ 07013; Defendant Yasmeen Khan, M.D., 2401 Morris Avenue, Union, NJ; Defendant MRK Consulting, LLC, 5 Cliff Road, Apt. D3, Woodland Park, NJ; Defendant Marie Kassai, 5 Cliff Road, Apt. D3, Woodland Park, NJ; Defendant Metro Pain Specialists PC, 790 Bloomfield Ave, Suite 1A, Clifton, NJ 07012; Premier Anesthesiology Associates PA, 55 Meadlowlands Pkwy, Secaucus, NJ 07094; Defendant CitiMed Services, PA, 190 Midland Ave, Saddle Brook, NJ 07663; Defendant Hudson Regional Hospital, 55 Meadowlands Pkwy, Secaucus, NJ 07094.

## INTRODUCTION

2.      This matter concerns a significant patient safety crisis, affecting over 3,700 patients and their spouses, arising from a harmful, profit-motivated course of conduct perpetrated by the

1

Defendants, including Yan Moshe, his sister Regina Moshe, M.D., and the entities that they mutually owned and/or controlled.

3.      This course of conduct was allowed to persist due to the negligence of various health care providers and consultants who worked at the Defendant HealthPlus Surgery Center, LLC, ("HealthPlus" or "HealthPlus LLC") as well as health care providers who negligently referred patients to the Defendant HealthPlus, LLC, resulting significant safety risks to patients of this facility, including exposure to dangerous bloodborne pathogens.

4.      In particular, from January 2018 until September 2018, thousands of patients were inappropriately and/or negligently referred from health care providers and medical centers in New York to the Defendant HealthPlus, a New Jersey ambulatory surgery facility ("ASC").  These patients were often transported, hours away from their home -- their transportation arranged and paid for by entities owned or controlled by Regina and/or Yan Moshe -- from one facility owned and/or controlled by the Moshe family to another.  These referrals were made without adequate disclosure of the financial and ownership interests shared between each entity as required under N.J.S.A. 45:9-22.5 and New York Public Health Law § 238.

5.      These referrals and transports to HealthPlus were rarely necessary for the treatment of these patients, but rather represented an effort by Yan Moshe and his sister Regina Moshe, M.D., to generate large profits from extensive and, at times, unnecessary medical and diagnostic care billed at inflated rates.

6.      Those receiving treatment at HealthPlus included large volumes of patients referred from the Defendant CitiMedical I PLLC, a New York entity owned and operated by Regina Moshe, M.D.  CitiMedical I PLLC and Regina Moshe, M.D. had financial and family ties to the Defendant HealthPlus, LLC and its owner Yan Moshe which were not appropriately disclosed to patients.

2

7.    Those referred from CitiMedical I PLLC to HealthPlus, LLC would receive treatment and services at HealthPlus which were billed to automobile insurance companies and workers compensation programs at higher out of network rates, often including significant charges from anesthesia services and other facility charges which depleted the patient's available coverage.

8.    This network of profit motivated referrals resulted in a deluge of patients referred to HealthPlus and overwhelmed the HealthPlus facility, which was overseen and actively managed by its owner Yan Moshe, who at all times relevant retained control over decisions affecting patient care.

9.    The HealthPlus facility lacked the necessary staff, equipment, policies and protocols to handle this volume of patients and procedures, resulting in significant risks to patient safety, including potential exposure to bloodborne pathogens, such as hepatitis B, hepatitis C, and human immunodeficiency virus (HIV).

10.    HealthPlus agents, servants and employees, including its medical director and nursing directors, failed to ensure the development of necessary policies and procedures, and failed to adequately supervise sterilization and infection control staff, resulting in the risk of patient exposure to bloodborne pathogens, including hepatitis B, hepatitis C, and human immunodeficiency virus (HIV), and other harms. This predictable outcome was known or should have been known by referring providers, including Regina Moshe, M.D. and CitiMedical I PLLC.

11.    Due to the overwhelming volume of patients and procedures, important safety considerations were negligently ignored, resulting in the inadequate sterilization of instruments and deficiencies in infection control.  These deficiencies were negligently ignored by healthcare providers and infection prevention consultants who knew or should have known that the conditions

at the facility placed patients at risk of infection, and should have taken steps to address these deficiencies.

12.    As a result of this conduct, and the negligence of the Defendants, patients of HealthPlus have been exposed to various risks, including but not limited to bloodborne infections acquired while patients at the HealthPlus facility, and suffer from the fear associated with exposure to these life-threatening diseases.

## PARTIES

13.    At all times relevant, the Plaintiffs, Lauren Marrero and Julio C. Marrero, were and continue to be residents of the County of Passaic, State of New Jersey.  The Plaintiff Lauren Marrero received medical care and treatment at HealthPlus Surgery Center, LLC between January and September of 2018.

14.    Plaintiff Julio C. Marrero is the spouse of Lauren Marrero.

15.    Plaintiff Charity Simms is a resident of the State of New Jersey.  The Plaintiff Charity Simms received medical care and treatment at HealthPlus Surgery Center, LLC between January and September of 2018.

16.    Plaintiff Duanne Winley-Dunk is a resident of the State of New York.  The Plaintiff Duanne Winley-Dunk received medical care and treatment at HealthPlus Surgery Center, LLC between January and September of 2018.

17.    Defendant HealthPlus Surgery Center, LLC (hereinafter referred to as "HealthPlus") is incorporated in the State of New Jersey.  HealthPlus maintains its principal offices and carries on regular business in Bergen County, New Jersey.  HealthPlus operates an ambulatory surgery center located at 190 Midland Ave, Saddle Brook, NJ 07663.  HealthPlus provided medical

treatment through its agents, servants and/or employees to the Plaintiffs between January 1, 2018 and September 7, 2018.

18.     The Defendant Yan Moshe (hereinafter referred to as "Moshe") is resident of the State of New York. He is not a licensed health care provider. He is the owner of the Defendant HealthPlus.  Yan Moshe is related to the Defendant Dr. Moshe and he goes by the alias Yan Leviyev.  At all relevant times, Defendant, Yan Moshe ("Moshe"), is the owner/operator of HealthPlus and is responsible for all its operations including the oversight/operation of the ambulatory surgery center located at 190 Midland Avenue, Saddle Brook, New Jersey.

19.     The Defendant Regina Moshe. M.D. (hereinafter referred to as "Dr. Moshe") is a resident of the State of New York and is licensed by the States of New York and New Jersey to practice the profession of medicine. She is the owner of the Defendants Citimedical I P L.L.C. and Citimed Services. P.A. She is related to the Defendant Yan Moshe and she goes by the alias Regina Leviyev.

20.     The Defendant Citimedical I P.L.L.C. (hereinafter referred to as "Citimedical NY") is a professional limited liability company organized under the laws of the State of New York and owned by the Defendant Dr. Moshe. At all times relevant, the Defendant Citimedical NY had financial relationships with the Defendants Yan Moshe and HealthPlus, and referred patients to the HealthPlus facility, including members of the class.

21.     The Defendant, Michele Miller ("Miller" or "Nursing Director Defendant") is a registered nurse and a resident of the State of New Jersey.  At all relevant times, Defendant, Michele Miller, was an agent, servant, and/or employee of HealthPlus, and served as the nursing director of the HealthPlus ambulatory surgery center located at 190 Midland Avenue, Saddle Brook, New Jersey and was responsible for, inter alia, infection control, ensuring the proper

sterilization/cleaning of instruments, injection of medications, and adherence to transmission based precautions.

22.     The Defendant Yasmeen Khan, MD ("Kahn") is a medical doctor and is believed to be a resident of the state of New Jersey At all relevant times Defendant, Yasmeen Khan, MD, was an agent, servant, and/or employee of HealthPlus, and served as the medical director of the HealthPlus ambulatory surgery center located at 190 Midland Avenue, Saddle Brook, New Jersey and was responsible for, inter alia, infection control, ensuring the proper sterilization/cleaning of instruments, injection of medications, and adherence to transmission based precautions. Kahn also provided anesthesiology services to HealthPlus patients. Yasmeen Khan, M.D. is at times referred to as the "Medical Director."

23.     MRK Consulting, LLC is incorporated in the state of New Jersey, and carries on regular business in New Jersey, providing consultancy services in infection prevention. At all times relevant, MRK Consulting, LLC undertook to provide consulting services to the HealthPlus ambulatory surgery center, including inspection and recommendations regarding proper infection control and sterilization processes.

24.     Marie Kassai is a New Jersey resident and an agent, servant and/or employee of MRK Consulting, LLC.  At all times relevant, Marie Kassai provided consulting services to the HealthPlus surgery center, including providing advice and recommendations regarding infection control and sterilization of medical instruments.

25.     Collectively, MRK Consulting LLC and Marie Kassai are referred to as the "MRK Defendants."

26.     The Defendant Metro Pain Specialists Professional Corporation (hereinafter referred to as "Metro Pain") is a professional corporation organized under the laws of the State of

New Jersey. At all times relevant, the Defendant Metro Pain had financial relationships with the Defendants Yan Moshe and HealthPlus, and rendered anesthesia services to patients to the HealthPlus facility, including members of the class.

27.     The Defendant Premier Anesthesiology Associates P.A (hereinafter referred to as "Premier") is a professional corporation organized under the laws of the State of New Jersey. At all times relevant, the Defendant Premier had financial relationships with the Defendants Yan Moshe and HealthPlus, and rendered anesthesia services to the HealthPlus facility, including members of the class.

28.     The Defendant Citimed Services., P.A. (hereinafter referred to as "Citimed NJ") is a professional association organized under the laws of the State of New Jersey and owned by the Defendant Dr. Moshe, and maintained financial associations with the Defendants Yan Moshe and HealthPlus. At all times relevant, the Defendant Citimed Services, P.A. carried on regular business with Yan Moshe and HealthPlus and rendered anesthesia services to the HealthPlus facility, including members of the class.

29.     Collectively, the Defendants Metro Pain Specialists Professional Corporation; Premier Anesthesiology Associates PA; Citimed Services, P.A. and Yasmeen Khan, MD, will be referred to as the "Anesthesiologist Defendants."

30.     The Defendant Hudson Regional Hospital (hereinafter referred to as "Hudson Regional") is an acute care hospital organized under the laws of the State of New Jersey and owned by the Defendant Yan Moshe. At all times relevant, the Defendant Hudson Regional rendered treatment to patients of the HealthPlus Surgery Center, LLC, and carried on regular business with Yan Moshe. Patients were referred to Hudson Regional by the Defendant HealthPlus, its owners,

agents and/or employees. Hudson Regional also billed for medical care provided at the HeathPlus facility.

31.     The Plaintiffs bring this Class Action on behalf of all persons who received medical care and treatment at HealthPlus Surgery Center, LLC between January 1, 2018 and September 7, 2018, and their spouses.

## JURISDICTION

32.     This Court has jurisdiction over this action pursuant to Class Action Fairness Act of 2005 (the "Class Action Fairness Act" or "CAFA"), as this matter has been filed as a class action on behalf of over 3,700 class members who reside in New York and New Jersey, among other states, against Defendants who reside in various states, including New York and New Jersey and the amount in controversy for the putative class members in the aggregate "exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2)."

33.     This Court has personal jurisdiction over each Defendant as each purposefully availed itself of the privilege of exploiting forum-based business opportunities and the exercise of personal jurisdiction is consistent with the U.S. Constitution.   The Defendants each conduct substantial business in New Jersey, have had systematic and continuous contacts with New Jersey, and have agents and representatives in New Jersey.

34.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendants reside, are found, have agents, or transact their affairs in this district. Defendants' conduct has also injured putative Class Members in this District.

## FACTS COMMON TO ALL COUNTS

**A.    The Defendant Yan Moshe oversaw and controlled a large network of financially interrelated entities that sought to direct patients to HealthPlus LLC and inflate patient billing through a process of inappropriate and negligent referrals.**

35.     The Defendant HealthPlus Surgery Center is an ambulatory surgery center located in Saddle Brook New Jersey.  This facility is owned and operated by the Defendant Yan Moshe, who, at all times relevant, retained an active role in managing the operations of this facility, including rendering staffing decisions, implementing practices and protocols with regard to treatment rendered within the facility, and dictating the volumes of patients treated at the facility, as well as aspects of their medical care.

> *1.    Patients were referred to the HealthPlus facility for treatment by entities with whom Yan Moshe maintained a financial and family relationship.*

36.     Ambulatory surgery centers typically offer facilities for physicians and surgeons who bring their own patients to the facility for treatment. Unlike many such ambulatory surgery centers, patients at the HealthPlus Surgery Center predominantly consisted of patients from New York who had been injured in accidents, who were referred directly to the facility by other medical entities in New York for treatment.

37.     In fact, despite being a New Jersey medical facility, over 5200 of the approximately 5700 procedures performed between January 2018 and September 2018 were performed on residents of New York State.  These patients were transported, in many cases, over several hours from New York to New Jersey, at no cost to the patient, by transportation companies controlled by Yan Moshe and family members.

38.     These patients from New York were referred to the New Jersey HealthPlus facility not because these out of state referrals were medically necessary, but rather because these patients

had unwittingly become caught in a complex network of medical entities which existed to financially benefit the Defendant Yan Moshe.

39.    In particular, a large volume of patients treated at HealthPlus between January and September 2018 were referred to HealthPlus by CitiMedical I PLLC, a New York medical facility owned by the Defendant Dr. Moshe, the sister of Yan Moshe.  These patients would, in some cases, be approached by individuals after an accident who would arrange for their treatment at the Defendant CitiMedical I, PLLC, in New York.  These patients would be examined, and then commonly referred to the Defendant HealthPlus in New Jersey for further treatment without advance notice of the financial and family relationships between CitiMedical NY, its owner, Regina Moshe, M.D., and HealthPlus LLC, and its owner, Yan Moshe.

40.    In fact, many of the procedures performed at HealthPlus consisted of care that would ordinarily take place within office-based surgery practice (OBSP), including certain types of pain management and chiropractic care, where the billing would not be as high and there would be no charges in New York for facility fees.  However, the Defendants have repeatedly targeted New York residents who had been injured in accidents in New York and appeared to be covered by New York insurers. Pursuant to inappropriate referrals, the Defendants had patients transported to New Jersey in order to avoid New York state's fee schedule and then submitted additional billing, including facility fees and anesthesia care.

41.    At all times relevant, anesthesia care was then rendered by professional corporations including Premier, Metro Pain, and Citimed Services., P.A., each of which had financial relationships with Yan Moshe and HealthPlus LLC. These entities received the benefit of the inflated fees and artificially large number of anesthesia cases, which were then paid back to Yan Moshe, though means which included but were not limited to the payment of rent fees, as Yan

Moshe was a landlord for each entity.  Additionally, Citimed Servcices, P.A., was owned and operated by Regina Moshe, Yan Moshe's sister, constituting a family relationship which is alleged ultimately benefited Yan Moshe and his family.

42.    Patients were referred between the Defendants based upon the financial relationships between the Defendants.  Patients were brought to another State, in many cases not because such care was unavailable where they lived.  Instead, they were brought to the locations that would yield significant payments to the Defendants. Many of these referrals were against the interests of the patients and risked using up all or most of the mandatory New York no-fault coverage in order to enrich the Defendants. The patients were not told that the excessive charges and referrals back and forth between the Defendants and the trips to another state could exhaust all or most of the mandatory New York no-fault coverage, potentially leaving no coverage for lost wages or anything else. The patients were not provided appropriate notice of the extensive interrelationships among the Defendants. These referrals were abusive, often against the interests of the patients and in violation of New York and New Jersey law.

43.    The complex web of interconnections amongst laypersons and professionals is a key element of the self-referral scheme. As noted above, many of the associations exist through leases for office space. The Defendants Citimed NY and Regina Moshe leased office space from the Defendant Moshe at 1963 Grand Concourse Bronx New York. The Defendants Citimed NY and Dr. Moshe leased office space from the Defendant Moshe at 63-36 99th Street Rego Park, New York. The Defendants Metro Pain, Premier, Citimed NJ and Dr. Moshe leased space from the Defendant Moshe at the Defendant HealthPlus, at 190 Midland Avenue, Saddle Brook, NJ.

44.    In that fashion, the Defendant Moshe benefited from this inappropriate referral network at all stages of the referral process – each of these constituent parts operating as a unified

single health system, which existed to funnel as many patients as possible to HealthPlus and other Moshe owned or controlled entities.

45.     This referral arrangement directly and proximately resulted in high volumes of patients being sent to HealthPlus for treatment, such that necessary and proper sterilization of instruments and tools could not occur. Bringing the patients to another state far from their homes, for unnecessary services, was clearly without regard to the welfare of these patients, and placed each patient at risk for illness and death associated with infection, among other hazards.

> 2.  *The Yan and Regina Moshe owned/affiliated entities existed as a single economic entity designed to generate profits from Yan Moshe and his family.*

46.     The Defendants Citimed NJ, Citimedical NY, Premier, Metro Pain and Hudson Regional were each owned and/or effectively controlled by Yan Moshe and Regina Moshe, and existed to generate substantial profits from inappropriate and/or negligent referrals between medical facilities with concealed financial relationships.   Yan Moshe retained control and dominion over each of these entities, such that patients receiving care from any of these entities would be caught in an interconnected web of related medical entities, providing an opportunity for the Moshe family to generate profits with each referral.

47.     These entities together represented a single economic entity, which was divided into separate entities only to cloak the interrelated nature of these entities and reduce potential legal liability. In the case of HealthPlus, for instance, this facility, which performed over 5700 medical procedures over just nine months maintained only limited professional malpractice insurance and assets clearly insufficient to address the potential exposure associated with providing such a high volume of medical care.

48.    Thus, it is alleged that the Defendants Yan Moshe, Regina Moshe, Citimed NJ, Citimedical NY, Premier, Metro Pain and Hudson Regional are each jointly liable for acts taken by any one of these entities, as they were in fact the acts of a single economic entity/enterprise.

**B.    The complex interrelationships of these entities and conduct of Yan Moshe in seeking to maximize profits resulted in large, unmanageable patient volumes that harmed patient well-being.**

49.    As a result of the complex interrelationships overseen and implemented by Yan Moshe, and the profit motivated referrals of New York patients to this New Jersey ambulatory surgery center, extraordinary and unmanageable volumes of patients came to receive treatment at HealthPlus.  From January to September of 2018, a shocking volume of procedures, numbering over 5700, were performed at HealthPlus on behalf of over 3700 patients.  This amounts to approximately 31 procedures per weekday, at a facility with only three operating rooms.

50.    On information and belief, during the relevant time period, the Defendant Moshe was actively involved in decisions regarding patient care and facility management. The higher the volume of patients referred to the facility, and the higher the frequency of anesthesia provided, the greater the profits Yan Moshe would realize from his enterprise.

51.    Over the relevant time period, the Defendant Moshe negligently encouraged and required staff and physicians to process and perform as many cases as possible, resulting in an inability of staff to follow appropriate sterilization and infection control procedures, and causing an unacceptable risk of infection to patients.  The extraordinary volume of patients entering the facility rendered appropriate sterilization and infection control processes difficult if not impossible, resulting in negligent infection control and sterilization of instruments at the facility by agents, servants and employees of the Defendant HealthPlus, posing significant risks to patients, including the risk of exposure to bloodborne pathogens.

52.     Defendant Yan Moshe, as owner and manager of Health Plus Surgery Center LLC, with the desire to maximize profits and in disregard of patient safety, made the dangerously irresponsible and negligent executive decision to increase the volume of daily procedures beyond safe capacity.  This conduct, along with the conduct of the other Defendants, resulted in a complete health safety system collapse at each and every level of patient safety, from creating systemic failures of adequately sterilized surgical tools and equipment, to failures in cleanliness of operating room tables, patient beds, bed sheets, gurneys, wheel chairs and other transport devices,  all of which caused Health Plus patients to be dangerously exposed to blood borne pathogens every hour of every day of business operations.

**C.    HealthPlus Staff, including its Medical Director, Nursing Directors, administrators, and infection prevention consultants negligently failed to carry out their responsibilities to oversee sterilization and infection control at the facility and protect patient safety, in violation of applicable standards of care.**

53.     In response to this obvious patient safety crisis, the Medical Director and Nursing Director Defendant were required under the standards of care to (1) develop necessary sterilization and infection control procedures; (2) monitor and supervise HealthPlus staff to ensure appropriate policies and protocols were being followed; and (3) take any and all efforts to ensure that patient safety is protected.  Instead, during the relevant time period, the Medical Director and Nursing Director Defendant negligently failed to develop appropriate policies and protocols, negligently failed to properly supervise the agents and employees of HealthPlus responsible for sterilization and infection control, and failed to intervene to ensure patient safety, further causing a risk of infection and other harm to HealthPlus patients.

54.     Similarly, Yan Moshe owed a duty to patients receiving care at the Defendant HealthPlus, and was required by the standards of care to ensure that a manageable volume of patients were being seen and treated at the facility, and that staff and medical providers were

capable of, and were in fact, complying with necessary policies and protocols for sterilization and infection control.  Moshe was further required to arrange for appropriate consultants, including infection preventionists, as required by law, and ensure that they were carrying out the essential functions of that role.  Here, however, Yan Moshe negligently failed to meet these requirements, resulting in harm to patient safety and heightened risks of infection.

55.    Additionally, the MRK Defendants, as infection preventionists, were obligated under the standards of care at all times relevant to inspect the HealthPlus facility, and monitor the HealthPlus staff's sterilization and infection control procedures, make necessary recommendations regarding sterilization and infection control, and take necessary steps to ensure that patient safety was protected.  The MRK Defendants, however, negligently failed to appropriately inspect the HealthPlus facility, negligently failed to observe the sterilization procedures of HealthPlus staff and negligently failed to make recommendation and ensure implementation of those recommendations to ensure patient safety.  This negligence caused increased risk that patients would be exposed to harmful bloodborne pathogens.

> **D.    Privileged Physicians, Entities Providing Anesthesia, and Referring Physicians failed to report and intervene in response to deficiencies in infection control and sterilization, but rather continued to see and treat and/or refer patients to HealthPlus, in violation of the standards of care.**

56.    The Anesthesiology Defendants, as privileged physicians operating on a regular basis at the Defendant HealthPlus, were or should have been aware of the unmanaged and unacceptable volume of patients referred to the HealthPlus facility, and the inability of the facility to ensure patient safety with regard to sterilization and infection control.  Nevertheless, these providers negligently continued treating patients at these facilities at all relevant times, and failed to take efforts to protect patient safety and the safety of the putative class members as was required under the standards of care.

57.     The Anesthesia Practice Defendants similarly were or should have been aware of the unmanaged volume of patients referred to the HealthPlus facility, based upon the sheer volume of patients seen at this facility, their observations within the facility, and the shared ownership and control over these entities.   Nevertheless, these providers negligently continued performing anesthesia on patients as these facilities at all times relevant.

58.     Moreover, the Defendants Citimedical NY and Regina Moshe, M.D., who referred large numbers of patients to the HealthPlus facility, were or should have been aware of the unacceptable volume of patients referred to the HealthPlus facility and the inability of this facility to ensure patient safety, based upon the sheer volume of their referrals, their knowledge of the facility itself, and the shared ownership and control that existed between these Defendants and HealthPlus.   Nevertheless, these Defendants negligently continued referring patients to these facilities at all times relevant, in violation of the standards of care, resulting in the elevated high risk of infection and the damages for which this claim is made.

### E.     The New Jersey Department of Health Investigation

59.     On or about December 26, 2018, the Defendant HealthPlus released a statement disclosing that on September 7, 2018, the New Jersey Department of Health closed the HealthPlus Surgery Center because some members of its staff "were not following proper sterile processing procedures and failed to comply with other regulations regarding the dispensing and storage of medication, as well as infection control planning and procedures."[1]

60.     The statement further revealed that an investigation by the New Jersey Department of Health found that during the time period of January 1, 2018 and September 7, 2018,

---

[1] Statement by HealthPlus Surgery Center Administrator Betty McCABE on Possible Patient Exposure to Bloodborne Pathogens, dated December 26, Available:
https://www.prweb.com/releases/statement_by_healthplus_surgery_center_administrator_betty_mccabe_on_possible_patient_exposure_to_bloodborne_pathogens/prweb16006837.htm

"deficiencies in infection control in both our sterilization/cleaning of instruments and the injection of medications may have exposed patients to blood borne pathogens (diseases in people's blood), such as hepatitis B, hepatitis C, and human immunodeficiency virus (HIV)."[2]

61.    On information and belief, the Defendant HealthPlus additionally issued notices to an estimated 3,700 former patients, advising that "lapses in infection control in sterilization/cleaning instruments and the injection of medications may have exposed patients to bloodborne pathogens (diseases in people's blood), such as hepatitis B, hepatitis C, and human immunodeficiency virus (HIV)." [3] [4]

62.    HIV can lead to acquired immunodeficiency syndrome ("AIDS"), if not treated. Once infected by the HIV virus, the human body cannot get rid of the virus completely, even with treatment. HIV attacks the body's immune system, specifically the CD4 cells (T cells), which help the immune system fight off infections. Untreated, HIV reduces the number of CD4 cells (T cells) in the body, making the person more likely to get other infections or infection-related cancers. Over time, HIV can destroy so many of these cells that the body cannot fight off infections and disease. [5]

63.    Hepatitis is an inflammation of the liver. Hepatitis Type B commonly occurs through contact with infected blood, semen or other bodily fluid through sex, sharing needles or other drug-injection equipment or from mother to baby at birth. Hepatitis type C is a blood-borne

---

[2] *Id.*

[3] Letter patients of HealthPlus Surgery Center, obtained by NBC News, http://media1.s-nbcnews.com/i/today/z_creative/HealthPlusPatientNoticeLetteronHPLetterheadDec42018.pdf, and attached as Exhibit 1.

[4] "More than 3,000 patients at New Jersey surgery center possibly exposed to HIV, hepatitis." Kalhan Rosenblatt, NBC News. https://www.nbcnews.com/news/us-news/more-3-000-patients-new-jersey-surgery-center-possibly-exposed-n951791.

[5] National Institute of Allergy and Infectious Diseases, HIV Page, https://www.niaid.nih.gov/diseases-conditions/hivaids

virus that is largely spread by exposure to infected needles or other drug injection equipment. Chronic infection with these viruses can lead to cirrhosis of the liver, end-stage liver disease, and liver cancer.[6]

64.    As a result of these failures, individuals who sought medical treatment at HealthPlus, as well as their spouses, with whom they have been in close physical and sexual contact, were exposed to harmful and potentially fatal viruses, including but not limited to HIV, hepatitis B, and hepatitis C. The Plaintiffs and others similarly situated now live in fear of their exposure to these potentially fatal viruses.

## CLASS ACTION ALLEGATIONS

65.    The class represented by Plaintiffs in this action and of which Plaintiffs are members consists of all persons who received medical care and treatment between January 1, 2018 and September 7, 2018 at Defendant HealthPlus Surgery Center, LLC, and their spouses.

66.    On information and belief, it is alleged that the number of members of the Class is in excess of 3,700 members, and therefore, are so numerous that joinder is impracticable.

67.    There are common questions of law and fact in this action which are not only common to the Class, but which predominate over any question affecting only individuals. The predominating questions include, but are not limited to:

  a.  Whether the Defendant HealthPlus was negligent in the administration of medical treatment, to include in the sterilization of medical equipment, tools and/or instrumentation, and/or in the dispensing and storage of medication; and

---

[6] National Institute of Allergy and Infectious Diseases, Hepatitis Page, https://www.niaid.nih.gov/diseases-conditions/hepatitis

b.  Whether HealthPlus, the Medical Director, the Nursing Directors, and Yan Moshe were negligent in the hiring, training, formulation of protocols and procedures, monitoring, and/or supervision, of their agents, servants, and/or employees with respect to the dispensing and storage of medication, sterilization of medical equipment, tools and/or instrumentation, and infection control planning and procedures.

c.  Whether the Anesthesiologist Defendants were negligent in continuing to treat patients at the HealthPlus facility during the relevant time period.

d.  Whether Regina Moshe and CitiMedical NY were negligent in referring patients to the HealthPlus facility during the relevant time period.

e.  Whether the MRK Defendants were negligent in supervising and monitoring the sterilization of medical equipment, tools and/or instrumentation, and/or in the dispensing and storage of medication and making appropriate recommendations.

f.  Whether Yan Moshe, Regina Moshe, Premier, Citimed NJ, Citimedical NY, Metro Pain and Hudson Regional Hospital and potentially others may be held liable for the negligence of the Defendant HealthPlus.

68.  The claims of the Plaintiffs are typical of the claims or defenses of the class.

69.  The named Plaintiffs are represented parties for the class and are able to, and will, fairly and adequately represent and protect the rights and interests of the class.

70.  This action is properly maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) and 23(b)(3) because:

(a)      the prosecution of separate actions by or against individual members of the class would create a risk of:

(i)      inconsistent or varying adjudications with respect to individual members of the class that would confront the defendants with incompatible standards of conduct because similarly situated plaintiffs would be treated differently, and

(ii)      adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members of the class not parties to the adjudication, or would substantially impair or impede their ability to protect their interests;

(b)      questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT ONE
### (Patient's Claim for Negligence against HealthPlus, the Medical Director and the Nursing Director Defendant)

71.      The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

72.      The Defendant HealthPlus is responsible to assure and maintain the safety of all patients who received treatment from their agents, apparent agents, servants, and/or employees.

73.      The Medical Director and the Nursing Director Defendant are also responsible to assure and maintain the safety of all patients who received treatment at the HealthPlus facility.

74.      It is alleged that HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, owed to the Plaintiffs and others similarly situated a duty to exercise a degree of care, skill and judgment expected of a competent

medical corporation and/or medical professional acting in the same or similar circumstances, which duty included the performance of adequate and proper inspection and maintenance of sterilization equipment, proper sterilization of tools, and proper supervision and oversight of staff responsible for the sterilization of medical tools and equipment, such that Plaintiffs' can undergo medical procedures and surgery without the risk of contracting blood pathogens, including but not limited to HIV, Hepatitis B and Hepatitis C.

75.    Between January 1, 2018 and September 7, 2018, HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, had a duty under applicable standards of medical practice and common law to properly investigate, credential, qualify, select, monitor, supervise, and retain only lawful and competent staff who act in accordance with the standards of care.

76.    Between January 1, 2018 and September 7, 2018, HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, had a duty under applicable standards of medical practice and common law to promulgate proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, privacy and lawful care of their patients.

77.    It is alleged that HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant knew or should have known that the sterilization and infection control procedures at their facility were insufficient and posed a substantial risk of harm to the Plaintiffs and others similarly situated between January 1, 2018 and September 7, 2018.

78.    The Defendant HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, were negligent in that they failed to

adequately and properly inspect and maintain its sterilization equipment, conduct the proper sterilization of tools, and properly supervise and oversee staff responsible the sterilization of medical tools and equipment, and were otherwise negligent. They further failed to ensure the development and implementation of an infection prevention and control program, and failed to adequately address cleaning and sanitation of horizontal surfaces and room and bed turn over.

79.    The Defendant HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, breached their common law duties and the applicable standards of medical practice on an ongoing basis by negligently failing to investigate, credential, qualify, select, monitor and supervise its medical personnel and staff to perform adequate sterilization.

80.    The Defendant HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, breached their common law duties and the applicable standards of medical and nursing practice on an ongoing basis by negligently failing to promulgate proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, privacy and lawful care of their patients.

81.    These breaches by the Defendant HealthPlus, through its agents, servants and employees, as well as the Medical Director and the Nursing Director Defendant, constituted continuing breaches of common law and the applicable standards of medical care and constituted negligence, gross negligence, carelessness, recklessness and wanton misconduct -- on a continuing basis.

82.    As a direct and proximate result of the aforementioned negligence and the Defendants ongoing breaches of the common law and violations of the standards of care, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were

exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources, including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

83.     The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

84.     As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)     Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)     Severe mental anguish and psychological distress;

(c)     The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)     Lost earnings and diminished earnings capacity.

85.     The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## COUNT TWO
### (Patient's Claim for Negligence against Yan Moshe as Owner of HealthPlus)

86.     The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

87.     The Defendant Yan Moshe is the owner of HealthPlus, and maintained complete dominion over the operations of HealthPlus, including the determination of how many patients were seen at the HealthPlus facility, as well as certain aspects of their medical treatment.  In this manner HealthPlus, served as a mere instrumentality of its owner Yan Moshe.

88.     Moreover, HealthPlus was inadequately capitalized and insured based on the volume of procedures performed at the facility and the revenue generated by the facility. Instead, this revenue was diverted to Yan Moshe, its owner.

89.     Yan Moshe also used HealthPlus LLC, as a well as the other entities he owned and/or controlled, as a means to generate revenue through referrals which were inappropriate under New Jersey and New York law, as patients were not appropriately advised of the financial relationships between these related entities.

90.     The interests of justice require that Yan Moshe be held liable for the negligence of the Defendant HealthPlus as its owner.

91.     As a direct and proximate result of the aforementioned negligence of HealthPlus, its agents and employees, and the Defendants ongoing breaches of the common law and violations of the standards of care, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress,

fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

92.     The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

93.     As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)     Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)     Severe mental anguish and psychological distress;

(c)     The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)     Lost earnings and diminished earnings capacity.

94.     The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## COUNT THREE
### (Patient's Claim for Negligence against Citimedical NY, Citimed NJ, Premier, Metro Pain and Hudson Regional Hospital as Related Entities)

95.    The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

96.    The Yan and Regina Moshe owned/affiliated entities, including Citimed NJ, Citimedical NY, Premier, Hudson Regional Hospital and Metro Pain, existed as a single economic entity designed to generate profits from Yan Moshe and his family.

97.    The Defendants Citimed NJ, Citimedical NY, Premier, Hudson Regional Hospital and Metro Pain were each owned and/or effectively controlled by Yan Moshe and Regina Moshe, and existed to generate substantial profits from inappropriate and/or negligent referrals between medical facilities with concealed financial relationships.

98.    Yan Moshe retained control and dominion over each of these entities, such that patients receiving care from any of these entities would be caught in an interconnected web of related medical entities, providing an opportunity for the Moshe family to generate profits with each referral.

99.    These entities together represented a single economic entity, which was divided into separate entities only to cloak the interrelated nature of these entities and reduce potential legal liability. In the case of HealthPlus, for instance, this facility, which performed over 5700 medical procedures over just nine months maintained only limited professional malpractice insurance and assets clearly insufficient to address the potential exposure associated with providing such a high volume of medical care. Instead, this revenue from each facility was diverted to Yan Moshe, its owner.

100.    Thus, it is alleged that the Defendants Yan Moshe, Regina Moshe, Citimed NJ, Citimedical NY, Premier, Metro Pain and Hudson Regional Hospital represented an amalgamation of corporate interests, entities and activities which blurred the legal distinction between the corporations and their activities, such that the interests of justice requires that they should be considered a single economic entity/enterprise and each should be held liable for the negligence of HealthPlus.

101.    As a direct and proximate result of the aforementioned negligence and the Defendants ongoing breaches of the common law and violations of the standards of care, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

102.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

103.    As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)    Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)    Severe mental anguish and psychological distress;

(c)     The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)     Lost earnings and diminished earnings capacity.

104.    The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## <u>COUNT FOUR</u>
### <u>(Patient's Claim for Direct Negligence against Yan Moshe)</u>

105.    The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

106.    Yan Moshe maintained an active role in the supervision and management of the HealthPlus facility, and had a duty to assure and maintain the safety of all patients who received treatment at the HealthPlus facility.

107.    It is alleged that Yan Moshe owed to the Plaintiffs and others similarly situated a duty to exercise a degree of care, skill and judgment expected of a reasonable person  acting in the same or similar circumstances, which duty included administrative management of the HealthPlus facility, including ensuring the inspection and maintenance of sterilization equipment, proper sterilization of tools, and proper supervision and oversight of staff responsible for the sterilization of medical tools and equipment, such that Plaintiffs' can undergo medical procedures and surgery without the risk of contracting blood pathogens, including but not limited to HIV, Hepatitis B and Hepatitis C.

108.    It is alleged that Yan Moshe knew or should have known that the sterilization procedures at their facility were insufficient and posed a substantial risk of harm to the Plaintiffs and others similarly situated between January 1, 2018 and September 7, 2018.

109.    Yan Moshe was negligent in that he failed to adequately manage patient schedules and procedure volumes and ensure that proper sterilization of instruments could occur, and were otherwise negligent, during the relevant time period.

110.    In particular, it is alleged that Yan Moshe encouraged and required that high volumes of procedures be performed at the facility, to maximize potential profits, placing patients at significant risk of harm, particularly, given the inability of the HealthPlus facility to ensure proper sterilization of surgical tools and other supplies.

111.    These breaches by Yan Moshe constituted continuing breaches of common law and the applicable standards of care and constituted negligence, gross negligence, carelessness, recklessness and wanton misconduct -- on a continuing basis.

112.    As a direct and proximate result of the aforementioned negligence and the Defendants ongoing breaches of the common law and breach of their duties to HealthPlus patients, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

113.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

114.    As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)    Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)    Severe mental anguish and psychological distress;

(c)    The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)    Lost earnings and diminished earnings capacity.

115.    The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## COUNT FIVE
### (Patient's Claim for Negligence against the MRK Defendants)

116.    The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

117.    The MRK Defendants, as infection preventionists, at all times relevant, were responsible for conducting surveys and assessments of the HealthPlus facility to ensure that proper infection control and sterilization measures were being undertaken.

118.    It is alleged that the MRK Defendants, through their agents, servants and employees, owed to the Plaintiffs and others similarly situated a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation and/or nurse acting in the same or similar circumstances, which duty included the performance of adequate and proper inspection and maintenance of sterilization equipment and sterile processing, proper sterilization of tools, and proper supervision and oversight of staff responsible for the sterilization of medical tools and equipment, such that Plaintiffs' can undergo medical procedures and surgery without the risk of contracting blood pathogens, including but not limited to HIV, Hepatitis B and Hepatitis C.

119.    Between January 1, 2018 and September 7, 2018, the MRK Defendants had a duty under applicable standards of medical practice and common law to promulgate and oversee proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, privacy and lawful care of their patients.

120.    It is alleged that the MRK Defendants knew or should have known that the sterilization and infection control procedures at the HealthPlus facility were insufficient and posed a substantial risk of harm to the Plaintiffs and others similarly situated between January 1, 2018 and September 7, 2018.

121.    The MRK Defendants were negligent in that they failed to adequately and properly supervise and oversee staff responsible the sterilization of medical tools and equipment and make appropriate recommendations, and were otherwise negligent.

122.    The MRK Defendants, through their agents, servants and employees, breached their common law duties and the applicable standards of medical and nursing practice on an ongoing basis by negligently failing to promulgate proper and effective standards, procedures, protocols, systems and rules to ensure quality care, safety, privacy and lawful care of their patients.

123.    These breaches by the MRK Defendants, through their agents, servants and employees, constituted continuing breaches of common law and the applicable standards of medical care and constituted negligence, gross negligence, carelessness, recklessness and wanton misconduct -- on a continuing basis.

124.    As a direct and proximate result of the aforementioned negligence and the Defendants ongoing breaches of the common law and violations of the standards of care, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

125.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

126.    As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)     Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)     Severe mental anguish and psychological distress;

(c)     The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)     Lost earnings and diminished earnings capacity.

127.    The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

**COUNT SIX**
**(Patient's Claim for Negligent Referral Against Regina Moshe, M.D. and Citimedical NY)**

128.    The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

129.    Regina Moshe, M.D. and Citimedical NY had a duty to assure that the patients it referred to the HealthPlus facility would receive competent and safe medical care.

130.    It is alleged that Regina Moshe, M.D. and Citimedical NY owed to the Plaintiffs and others similarly situated a duty to exercise a degree of care, skill and judgment expected of a reasonable medical provider or medical corporation  acting in the same or similar circumstances, which duty included ensuring that the HealthPlus facility could accommodate the high volume of patients referred to that facility without putting patients at risk of contracting blood pathogens, including but not limited to HIV, Hepatitis B and Hepatitis C.

131.    It is alleged that Regina Moshe, M.D. and Citimedical NY knew or should have known that the sterilization procedures at their facility were insufficient and posed a substantial risk of harm to the Plaintiffs and others similarly situated between January 1, 2018 and September 7, 2018.

132.    Regina Moshe, M.D. and Citimedical NY were negligent in that they continued referring patients to the HealthPlus facility despite the clear risks of infection associated with receiving care that this facility during the relevant time period.

133.    These breaches by Regina Moshe, M.D. and Citimedical NY constituted continuing breaches of common law and the applicable standards of care and constituted negligence, gross negligence, carelessness, recklessness and wanton misconduct -- on a continuing basis.

134.    As a direct and proximate result of the aforementioned negligence and the Defendants ongoing breaches of the common law and breach of their duties to HealthPlus patients, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

135.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

136.    As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)    Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)    Severe mental anguish and psychological distress;

(c)    The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)    Lost earnings and diminished earnings capacity.

137.    The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## COUNT SEVEN
### (Patient's Claim for Negligent Against the Anesthesiologist Defendants)

138.    The Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

139.    The Anesthesiologist Defendants had a duty to assure that the patients receiving treatment at the HealthPlus facility received competent and safe medical care.

140.    It is alleged that the Anesthesiologist Defendants owed to the Plaintiffs and others similarly situated a duty to exercise a degree of care, skill and judgment expected of a reasonable physician or medical corporation acting in the same or similar circumstances, which duty included

ensuring that the HealthPlus facility could accommodate the high volume of patients referred to that facility without putting patients at risk of contracting blood pathogens, including but not limited to HIV, Hepatitis B and Hepatitis C, as well as identifying and reporting evidence of failed sterilization or infection control.

141.    It is alleged that the Anesthesiologist Defendants knew or should have known that the sterilization procedures at their facility were insufficient and posed a substantial risk of harm to the Plaintiffs and others similarly situated between January 1, 2018 and September 7, 2018.

142.    The Anesthesiologist Defendants were negligent in that they continued performing procedures at the HealthPlus facility and failed to ensure that corrective action was taken to correct deficiencies in infection control and sterilization despite the clear risks of infection associated with receiving care that this facility during the relevant time period.

143.    These breaches by the Anesthesiologist Defendants constituted continuing breaches of common law and the applicable standards of care and constituted negligence, gross negligence, carelessness, recklessness and wanton misconduct -- on a continuing basis.

144.    As a direct and proximate result of the aforementioned negligence and the Defendants' ongoing breaches of the common law and breach of their duties to HealthPlus patients, the Plaintiffs who received medical care at the Defendants facility, and others similarly situated, were exposed to dangerous pathogens through inadequately sterilized medical equipment and other sources including those set forth in the New Jersey Department of Health Report, and have suffered and continue to suffer physical pain, emotional anguish, distress, fear, anxiety, humiliation, embarrassment and other physical and emotional injuries and damages (both economic and non-economic), as well as permanent disability, in the past, present, and future.

145.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

146.    As a direct, proximate, immediate and foreseeable result of the Defendant's conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)    Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)    Severe mental anguish and psychological distress;

(c)    The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)    Lost earnings and diminished earnings capacity.

147.    The actions of the Defendants were recklessly indifferent to the rights, health and safety of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## COUNT EIGHT
### (Spousal Claim for Negligence)

148.    Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

149.    Plaintiff Julio C. Marrero is the spouse of Plaintiff Lauren Marrero.

150.    As a result of the Defendants aforesaid negligence, the Plaintiff Julio Marrero, and other similarly situated spouses, have been exposed to dangerous pathogens through close physical and/or sexual contact with their spouses, who were exposed to these pathogens during their treatment at the Defendant HealthPlus facility.

151.    The Plaintiffs refer to the negligence of the Defendants as the sole and proximate cause of the injuries, damages and permanent disability of the Plaintiffs, and others similarly situated, with the Plaintiffs, and others similarly situated, being in no way contributorily negligent.

152.    As a direct, proximate, immediate and foreseeable result of the Defendants' conduct, the Plaintiffs, and others similarly situated, have and/or will suffer permanent economic and non-economic damages including but not limited to:

(a)    Great indignity, humiliation, shame, mortification, and other injuries to their physical, mental, emotional and nervous systems;

(b)    Severe mental anguish and psychological distress;

(c)    The past, present and future cost of medical care, including but not limited to medical monitoring, therapy and psychiatric and/or psychological counseling; and

(d)    Lost earnings and diminished earnings capacity.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## <u>COUNT NINE</u>
### <u>(Loss of Society, Consortium, Companionship and Services)</u>

153.    Plaintiffs incorporate in this Count those facts set forth hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

154.    Plaintiffs and others similarly situated, as a direct and proximate result of the aforesaid negligence, have suffered emotional distress and have been deprived of the society, consortium, companionship and services of their spouses.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages, punitive damages, interest, attorney's fees, costs of suit and such other relief that the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable under the law.

**MAGGIANO, DIGIROLAMO & LIZZI, PC**

/s/ Michael Maggiano
Michael J. Maggiano, Esquire – Attorney ID 014581974
201 Columbia Avenue
Fort Lee, New Jersey 07024
Phone: (201) 585-9111
Fax: (201)292-8145

**SCHOCHOR, FEDERICO & STATON, P.A.**

/s/ Philip Federico
Philip Federico - Admitted *Pro Hac*
Brent Ceryes - Admitted *Pro Hac*
1211 St. Paul Street
Baltimore, Maryland 21202
Phone:  (410) 234 – 1000
Fax: (410) 234 – 1010
pfederico@sfspa.com
bceryes@sfspa.com

**ROBINSON & YABLON, P.C.**

/s/ Jared R. Cooper
Jared R. Cooper
Brett Stambolian

39

232 Madison Avenue, Suite 909
New York, New York 10016
Phone: 212-725-8566
Fax:  212-725-8567
jcooper@ryinjury.com
bstambolian@ryinjury.com

*Attorneys for Plaintiffs and Putative Class Members*