UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAUREN MARRERO AND JULIO C. MARRERO, et al.<br><br>Plaintiffs<br><br>v.<br><br>HEALTHPLUS SURGERY CENTER, LLC, et al.<br><br>Defendants: | Civil No.: 2:19-cv-00964-(WJM) |

## QUALIFIED SETTLEMENT FUND ORDER

The Plaintiffs have moved the Court for entry of an Order to aid in the efficient processing and administration of the Confidential Master Settlement Agreement (the "MSA") between Defendants, Plaintiffs' Counsel, the Plaintiffs, and other claimants, to resolve the claims of certain claimants against the Defendants. In particular, the Motion seeks an Order (1) to establish a Qualified Settlement Fund (the "Fund") within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq.* ("Regulations"); (2) to appoint RG/2 Claims Administration, LLC, ("RG/2") as the Qualified Settlement Fund Administrator (the "QSF Administrator") pursuant to the terms, conditions, and restrictions of the MSA; and (3) to appoint Sandy Springs Bank ("the Bank") as the financial institution that will hold the Fund.

The Court, having reviewed the Motion and Defendants having agreed to the relief sought and this Order, , and finding good and sufficient cause therefore, hereby FINDS and ORDERS as follows:

1. The Fund is established as a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1.468B-1(c)(1).

2. RG/2, is hereby appointed as the QSF Administrator pursuant to the terms, conditions, and restrictions of the MSA, Unopposed Motion to Establish Qualified Settlement Fund, and is hereby granted the authority to conduct any and all activities necessary to administer this QSF as described in the Motion filed with this Court by

Plaintiffs' Counsel.

3. RG/2 as the QSF Administrator is authorized to segregate settlement funds if necessary, distribute all attorney fees and litigation expenses, and invest the funds as set forth within the accompanying Motion.

4. RG/2 as the QSF Administrator is authorized to make distributions of the Fund consistent with the MSA and the accompanying motion.

5. RG/2 as the QSF Administrator is authorized upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

6. The Fund shall be held at Sandy Springs Bank, a financial institution with headquarters in Olney, Maryland, according to the terms, conditions and restrictions of this Order.

7. No bond is required for the QSF Administrator, provided that all monies received by the QSF from the Defendants pursuant to the MSA, which include all principal and interest earned thereon (the "Settlement Monies"), shall be deposited by the QSF Administrator in an investment agency account held in custody at the Bank, for the benefit of and titled in the legal name of the QSF. Any and all funds held in the QSF shall be held in an interest bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the QSF, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

8. Following the instructions of the QSF Administrator and/or its investment advisor pursuant to these terms and conditions, the Bank shall invest the Fund such that the

following investment policy is implemented: (1) safety of principal; (2) zero bank liability exposure; and/or (3) the use of zero sweep disbursement accounts. Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the QSF except upon instructions of the QSF Administrator, or, if requested, upon the order of this Court upon the motion of Counsel or the QSF Administrator. The QSF Administrator retains the right to remove the Bank, and may designate a replacement bank, upon the written consent of Plaintiffs' Counsel. In the event of such replacement, the terms and conditions of this Order, including, without limitation, those addressing bond requirements, investments, and distributions from the QSF, shall apply to any such replacement bank.

9. The QSF Administrator shall not be liable for any losses as a result of investing the Settlement Monies as directed by the Court. Any such losses shall not be recoverable from Counsel, Defendants or any settling Claimants and/or their counsel, none of whom shall have any responsibility for the QSF Administrator's and the Bank's performance. Receipt and/or investment of the Settlement Monies shall be confirmed to Counsel by the QSF Administrator as soon as practicable by account statement or other reasonable method not to exceed 15 days from receipt of the Settlement Monies by the Bank.

10. The QSF Administrator is authorized to effect qualified assignments of any resulting structured settlement liability or similar vehicle within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee, and to take all actions as provided in the Motion filed with this Court by Counsel, following the terms of the Settlement Agreement entered by this Court.

11. Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF and thereafter shall be discharged from

any further responsibility with respect to the QSF.

SO ORDERED THIS 22nd day of August 2024, in

*[Signature]*